UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

BRIAN NORMANN and
ANTHONY WILLIAM ROSSI III

Hon. William J. Martini

Crim. No. 26-245

**Oral Argument Requested**

DEFENDANT BRIAN NORMANN'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS OMNIBUS PRETRIAL MOTIONS

Dated: November 9, 2026

ELLIOTT LEVINE JAROSLAW NEILS LLP
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, NY 10165
(212) 321-0510

Attorneys for Defendant Brian Normann

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT ..............................................................................................2

I. THE INDICTMENT SHOULD BE DISMISSED FOR FAILING TO STATE AN OFFENSE AND UNTIMELINESS ........................................................2

A. The Honest-Services Object Still Fails to State An Offense.................2

1. The Government cannot simply ignore that Third Circuit precedent requires a fiduciary duty anchored by positive law....2

2. The Self-Dealing Allegations are an impermissible theory with no legitimate place in this Indictment........................................3

B. The Wire-Fraud Object, Standing Alone, Is Untimely Because the Indictment Alleges Only a Kickback Scheme Post-July 2020..............4

II. THE GOVERNMENT SHOULD BE REQUIRED TO SUPPLY A BILL OF PARTICULARS ...........................................................................5

1. Mr. Normann seeks the identity of the charged conduct, not the "fruits" of the Government's investigation.................................5

2. The overwhelming volume of discovery heightens rather than cures the need for a bill of particulars.......................................6

3. An informal reverse proffer is no substitute for a binding bill of particulars...........................................................................8

III. THE GOVERNMENT CANNOT AVOID ITS DISCOVERY OBLIGATIONS BY SUBSTITUTING ITS OWN STANDARDS ...............8

IV. ALL PARTIES AGREE THE COURT SHOULD ENTER AN ORDER PRESERVING MR. NORMANN'S PRIVILEGES ....................................10

V. MR. NORMANN HAS MADE THE SUBSTANTIAL PRELIMINARY SHOWING REQUIRED FOR A *FRANKS* HEARING................................11

VI. CONCLUSION..........................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Chiarella v. United States*, 445 U.S. 222 (1980) .....2

*Murray v. United States*, 487 U.S. 533 (1988) .....12

*Sherwood v. Mulvihill*, 113 F.3d 396 (3d Cir. 1997) .....14

*Skilling v. United States*, 561 U.S. 358 (2010) .....2, 3

*United States v. Armocida*, 515 F.2d 49 (3d Cir. 1975) .....6

*United States v. Bornman*, 559 F.3d 150 (3d Cir. 2009) .....5

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) .....6, 8

*United States v. Calisto*, 838 F.2d 711, 716 (3d Cir. 1988) .....11

*United States v. Cammarata*, No. CR 21-00427-01, 2022 WL 7127565 (E.D. Pa. Oct. 12, 2022) .....6

*United States v. Coburn*, 439 F. Supp. 3d 361 (D.N.J. 2020) .....7, 10

*United States v. Connolly*, No. 16 CR. 0370 (CM), 2019 WL 2120523 (S.D.N.Y. May 2, 2019) .....10

*United States v. Duronio*, No. CRIM.A.02-933(JAG), 2006 WL 1457936 (D.N.J. May 23, 2006) .....10

*United States v. Frost*, 999 F.2d 737 (3d Cir. 1993) .....11

*United States v. Grasso*, 173 F. Supp. 2d 353 (E.D. Pa. 2001) .....7

*United States v. Holovacko*, 781 F. App'x 100 (3d Cir. 2019) .....9, 10

*United States v. Lacerda*, No. CRIM. 12-303 NLH/AMD, 2013 WL 3146835 (D.N.J. June 19, 2013) ........................................................................6

*United States v. Murphy*, 323 F.3d 102, 104 (3d Cir. 2003) ................................2, 3

*United States v. Yusuf*, 461 F.3d 374 (3d Cir. 2006) ....................................... 11, 12

**Rules**

Fed. R. Crim. P. 16(a)(1)(E)(iii) ........................................................................8, 9

Fed. R. Crim. P. 7(d) ...............................................................................................4

Fed. R. Evid. 401 .....................................................................................................4

Rule 7(f) ...................................................................................................................6

Defendant Brian Normann, by and through his attorneys Elliott Levine Jaroslaw Neils LLP, respectfully submits this reply memorandum of law in further support of his pretrial motions to: (1) dismiss the Indictment (Dkt. 1, "Ind.") for failure to state an offense and untimeliness; or, in the alternative, (2) strike the Self-Dealing Allegations; (3) order the Government to file a bill of particulars; (4) compel the production of documents under Fed. R. Crim. P. 16 and/or *Brady*/*Giglio*; (5) protect Mr. Normann's claim of privilege over documents inadvertently produced by the Government; and (6) order a *Franks* hearing regarding the accuracy of the case agent's statements in and the sufficiency of the search warrant affidavit for the Gmail Account.[1]

## PRELIMINARY STATEMENT

The Government's Opposition (Dkt. 48, "Opp.") underscores rather than addresses the deficiencies and irregularities in this case. First and foremost, it cannot defend the Indictment without ignoring binding Third Circuit precedent requiring a cognizable fiduciary duty and divorcing itself from the Indictment's plain text. And the remaining arguments bring into sharp focus the Government's efforts to hide the ball behind a mountain of haphazard discovery; produced under its own

[1] Terms not otherwise defined herein have the same meaning ascribed to them in Mr. Normann's Opening Brief (Dkt. 35-1; "Br.").

manufactured and indefensible standards; while urging this Court to deny Mr. Normann a chance to probe further, including at a *Franks* hearing.

As further set forth in the Opening Brief and herein, the Indictment should be dismissed for failing to state an honest-services object and alleging a wire-fraud object that is untimely standing alone. Failing that, the Court should at a minimum grant the alternative relief sought, to protect Mr. Normann's Constitutional rights.

## ARGUMENT

### I. THE INDICTMENT SHOULD BE DISMISSED FOR FAILING TO STATE AN OFFENSE AND UNTIMELINESS

#### A. The Honest-Services Object Still Fails to State An Offense

##### 1. The Government cannot simply ignore that Third Circuit precedent requires a fiduciary duty anchored by positive law.

The Government's failure to even cite *United States v. Murphy* is a tacit admission that the Indictment falls short of the recognized fiduciary duty required by the Third Circuit. 323 F.3d 102, 104 (3d Cir. 2003), *as amended* (June 4, 2003).

*Skilling* recognized—without resolving—that there are "divisions in the Courts of Appeals regarding the source and scope of fiduciary duties" that trigger the duty of honest services. *Skilling v. United States*, 561 U.S. 358, 408 n.41 (2010).[2]

---

[2] The Government mischaracterizes this footnote as holding that an employer-employee or even non-fiduciary "relationship of trust or confidence" would suffice. Opp. at 16. Rather, it merely observes that fiduciary duty debates were rarer in bribe-and-kickback cases (citing a Ninth Circuit employee-employer case amongst examples) and quotes *Chiarella v. United States*, 445 U.S. 222, 233 (1980) for the

In *this* Circuit, honest services fraud requires the "anchor of a fiduciary relationship established by state or federal law." *Murphy*, 323 F.3d at 104. The Government cites no Third Circuit case holding that an employee-employer relationship satisfies the standard of a "preexisting legal duty" where "state or federal law already clearly establishes a fiduciary relationship."[3] *Id.* at 115, 117. Instead, the Government relies on cases decided in Circuits that do *not* require a fiduciary relationship established by positive law, Opp. at 15-18, which are of course inapplicable here.

2. The Self-Dealing Allegations are an impermissible theory with no legitimate place in this Indictment.

Despite the Government's claims that the honest-services object "is premised on the kickback scheme, not the nondisclosure of a conflicting financial interest" barred by *Skilling*, Opp. at 19, the Indictment unequivocally charges *both* theories:

> NORMANN directly breached his fiduciary duty of loyalty to the Victim Company when he (1) received kickbacks in exchange for funneling marketing and promotional work to GS Line through his employment at the Victim Company ***and (2) dealt on both sides of the transactions between GS Line and the Victim Company***.

Ind. ¶ 13(x) (emphasis added); *see also* Br. at 13. Such a blatant attempt to circumvent *Skilling* is hardly mere "context," Opp. at 19, and should be dismissed.

---

general proposition "'that [a fiduciary] duty arises from a specific relationship between two parties.'" *Skilling*, 561 U.S. at 408 n.41 (alteration in original).

[3] *Murphy* also squarely rejected the government's belated argument that bribery statutes can supply the requisite "anchor." 323 F.3d at 115, 117; *see* Opp. at 17-18.

In the alternative, the Self-Dealing Allegations should be stricken under Fed. R. Crim. P. 7(d). Br. 16-17. The Government half-heartedly argues that employment policies are relevant to show Mr. Normann acted in "bad faith" when claiming to be self-employed. Opp. at 20. But generalized bad faith is not an element of honest services fraud. Fed. R. Evid. 401 (relevant evidence must relate to a "fact in consequence"). And an alleged violation of conflict-of-interest policies does not make the existence of a corrupt *quid pro quo* exchange any more or less probable. *See, e.g.*, Ind. ¶ 13(g) (alleging non-disclosure of interest in Hurley, without alleging ties to kickback scheme). Given that the Government makes no argument that the Self-Dealing Allegations are not prejudicial, Opp. at 21, they should be stricken.

**B. The Wire-Fraud Object, Standing Alone, Is Untimely Because the Indictment Alleges Only a Kickback Scheme Post-July 2020**

The Indictment, as narrowed to the wire-fraud object, is untimely because the only post-July 2020 allegations relate solely to the honest-services object.[4] Br. at 15.

In a footnote, the Government asserts that "the June and August depositing of $1.4 million and the splitting of the money between the defendants . . . relates to the wire fraud conspiracy." Opp. at 39 n.5. But the June conduct is untimely, and the August allegation that Mr. Rossi "caused approximately $700,000 in kickbacks to

---

[4] The government mischaracterizes the argument as contingent on the dismissal of self-dealing allegations. Opp. at 39 n.5.

be transferred" to Mr. Normann plainly speaks only to the honest-services object. Ind. ¶ 13(q). Nor could it extend the wire-fraud limitations period, as once the funds were allegedly fraudulently obtained from VC, "subsequent actions with respect to . . . the money d[o] not further the underlying scheme." *United States v. Bornman*, 559 F.3d 150, 155 (3d Cir. 2009), *as amended* (Apr. 24, 2009), *as amended* (May 5, 2009).

## II. THE GOVERNMENT SHOULD BE REQUIRED TO SUPPLY A BILL OF PARTICULARS

The Indictment alleges a scheme spanning five years and over $30 million in transactions, but does *not* allege that each invoice is fraudulent, nor that each RFS or program was "funneled." Rather than simply identify which invoices, RFSs, and programs are part of the charged conduct so that Mr. Normann can prepare a defense and avoid surprise, the Government attempts to (1) recast his narrow request as a wholesale demand for evidence, (2) hide behind the sheer volume of documents, and (3) substitute an informal reverse proffer for the binding notice of a bill of particulars.

### 1. Mr. Normann seeks the identity of the charged conduct, not the "fruits" of the Government's investigation.

Contrary to the Government's claims, Mr. Normann seeks neither "the fruits of the [G]overnment's investigation" nor identification of "any and all false and fraudulent statements." Opp. at 41-42. Rather, he seeks only two simple lists: (1)

invoices the Government intends to prove are fraudulent, and (2) RFSs or programs the Government contends were improperly "funneled." This is a request to identify the *actus reus*, not the evidence or theories by which the Government will prove them,[5] and thus falls squarely within the bounds of Rule 7(f).

2. The overwhelming volume of discovery heightens rather than cures the need for a bill of particulars.

Although the Government argues that it has satisfied its obligations by the sheer volume of discovery, Opp. at 44-45, courts recognize that "disclos[ing] . . . 'mountains of documents' is not an adequate substitute for a bill of particulars when the government's disclosure does not provide guidance regarding what it seeks to prove at trial." *United States v. Lacerda*, No. CRIM. 12-303 NLH/AMD, 2013 WL 3146835, at *14 (D.N.J. June 19, 2013) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987)); *United States v. Cammarata*, No. CR 21-00427-01, 2022 WL 7127565, at *4 (E.D. Pa. Oct. 12, 2022) (bill warranted where defendant "would be forced to tediously weed through numerous transaction records in an attempt to identify which specific claims the government is alleging are fraudulent").

Here, the Government misleadingly claims the Indictment "details how the Defendants used RFSs in furtherance of the conspiracy and also provides specific

[5] *United States v. Armocida* is inapposite because it involved a request to identify "overt acts not alleged in the indictment." 515 F.2d 49, 54 (3d Cir. 1975).

examples of fraudulent invoices." Opp. at 47. In truth, the Indictment identifies only a *single* invoice as fraudulent, (Ind. ¶ 13(f)(ii)), and fails entirely to identify any particular RFS or program as "funneled." As the cases cited by the Government demonstrate, this presents the paradigmatic case for particularization. Opp. at 45-46; *see United States v. Coburn*, 439 F. Supp. 3d 361, 383 (D.N.J. 2020) (directing government "to point the defense to records sufficient to identify the relevant payments"); *United States v. Grasso*, 173 F. Supp. 2d 353, 367 (E.D. Pa. 2001) (ordering government to "inform Defendant which solicitations it intends to use at trial to support the mail and wire fraud charges").

Despite insisting the information is "readily discernible through the Indictment and the **voluminous** discovery," Opp. at 47 (emphasis added), the Government cannot demonstrate specificity by pointing to a spectacularly disorganized haystack and demanding Mr. Normann dig for needles.[6] Because such

[6] As the Court has likely ascertained from the bevy of motions to compel and the high-level view of the discovery issues, the Government's contention "that discovery has been provided in an organized and comprehensible fashion," is entirely unsupported. Among the many deviations from standard discovery practices, the Government has produced (1) the vast majority of documents without at least one of natives, images, or extracted text—and a handful lacking all three, *i.e.*, entirely lacking content; (2) corrected versions of the foregoing, without any index to cross-reference to the originals; (3) Korean-language documents without translations; and (4) documents with Bates numbering only on the first page, which the Government has refused to correct with standard page-level Bates stamps.

a task would impermissibly shift the burden of proof to Mr. Normann, *Bortnovsky*, 820 F.2d at 575, a bill of particulars is warranted.

3. An informal reverse proffer is no substitute for a binding bill of particulars.

Finally, the Government points to the "detailed reverse proffer session" it conducted for each defendant. Opp. at 45. As the Government acknowledges, a bill of particulars binds the Government and guards against variance at trial. Opp. at 43. Because the informal reverse proffer is non-binding, it cannot fulfill the same role.

## III. THE GOVERNMENT CANNOT AVOID ITS DISCOVERY OBLIGATIONS BY SUBSTITUTING ITS OWN STANDARDS

In its Opposition, the Government doubles down on replacing the standards set by Rule 16 and the Constitution with its own assessment of what is relevant and material. Despite repeatedly claiming that Mr. Normann engages in "mere speculation" and seeks an "open-ended fishing expedition," Mr. Normann has identified particular categories of documents whose production is commanded by the standards that *actually* apply.

***First***, Rule 16 clearly requires production of Mr. Normann's entire mailbox, as it "was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E)(iii). The Government's claim that it never received Mr. Normann's complete inbox, Opp. at 51, directly conflicts with VC's representation that it provided the Government with complete PSTs that were not based on search terms.

Br., Ex. 1. At a minimum, this factual conflict cannot be resolved by the Government's own say-so. Thus, the Court should order production of the mailbox in its entirety or, failing that, provide the mailbox for *in camera* review. Br. at 28.

***Second***, Rule 16 independently requires production of Mr. Normann's communications, as well as those of other key custodians of VC, because they are material. Fed. R. Crim. P. 16(a)(1)(E)(i). Although "material" documents include *both* those supporting and refuting the charged crime, the Government has concerningly limited its production to only those "**<u>concerning the charged conspiracy between Normann and Rossi</u>**" and "**<u>relat[ing] to the honest services fraud and wire fraud conspiracy charged in the Indictment</u>**." Opp. at 49-50 (emphasis added). This screen can, and seemingly has, filtered out documents helpful to the defense, such as VC's own audit materials.

***Third***, *Brady/Giglio* requires the Government to produce any exculpatory materials from VC in the Government's constructive possession. While it is "unusual to find prosecutors in constructive possession of evidence held by…a private party," this is the "unusual" case where the private party's interest is "identical to—or even congruent with—the government's interests." *United States v. Holovacko*, 781 F. App'x 100, 105 (3d Cir. 2019). The Government can cite no case supporting the

bright-line prohibition claimed in its brief.[7] Instead, time and again, courts in this Circuit and District consider the *Risha* factors and only decline to find constructive possession when the two investigations were truly independent. *See, e.g.*, *Holovacko*, 781 F. App'x at 105 (private party's "investigation was already completed by the time the Government's began"); *United States v. Coburn*, No. CV219CR00120KM, 2023 WL 6210864, at *11 (D.N.J. July 20, 2023) (AUSA was "very careful not to cross a line and be perceived as directing the company to do something"); *United States v. Duronio*, No. CRIM.A.02-933(JAG), 2006 WL 1457936, at *3 (D.N.J. May 23, 2006), *aff'd*, No. 06-5116, 2009 WL 294377 (3d Cir. Feb. 9, 2009) (no "spirit of cooperation" where government did not share information and private party "failed to disclose to the government, for two years, that CR was the subject of an internal investigation"). That is not the case here, Br. at 33-36, and email traffic demonstrates that VC repeatedly offered to make documents widely available. Accordingly, these materials should be produced.

## IV. ALL PARTIES AGREE THE COURT SHOULD ENTER AN ORDER PRESERVING MR. NORMANN'S PRIVILEGES

---

[7] By contrast, this exact type of reasoning has been permitted to extend the duties of the government to a private entity in other cases vindicating individuals' Constitutional rights. *E.g.*, *United States v. Connolly*, No. 16 CR. 0370 (CM), 2019 WL 2120523, at *14 (S.D.N.Y. May 2, 2019) (finding that when the government and a private entity failed to "*actually conduct[] parallel investigations*" there was a sufficiently close nexus to impute the private entity's actions to the government).

All parties agree that the Government's disclosure of inadvertently privileged materials should not effect a waiver. Mr. Normann has not waived privilege over any of the materials identified for review by the USAO's privilege taint team, and he specifically requested that the Government claw back materials from Rossi's counsel, which it represents it has. Opp. at 75-76. The Government does not oppose Mr. Normann's request for an order confirming that his privilege is preserved, and we request that one be entered at this time.

## V. MR. NORMANN HAS MADE THE SUBSTANTIAL PRELIMINARY SHOWING REQUIRED FOR A *FRANKS* HEARING

In order to obtain a *Franks* hearing, a defendant need only "make a 'substantial preliminary showing' that the affidavit contained a false statement [or omission], which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).[8] While "mere conclusory allegations or a 'mere desire to cross-

[8] The cases from this Circuit that the Government cites in its briefing do not assess whether a hearing is appropriate, but rather whether exclusion or suppression of the evidence obtained through a warrant is appropriate. Suppression requires a defendant show these elements are true by a preponderance of the evidence – a higher burden than the one required to obtain a hearing. *E.g.*, *United States v. Calisto*, 838 F.2d 711, 716 (3d Cir. 1988) (finding on a post-conviction appeal that a warrant was valid under the *Franks* standard); *Yusuf*, 461 F.3d at 378 (finding post-hearing that the testimony from that hearing did not support the suppression of evidence obtained through the execution of search warrants); *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993) ("Thus, **in order to secure suppression of the fruits of the search**, a defendant must show *both* that bad faith or reckless disregard

examine'" are insufficient, the requirement for "an offer of proof contradicting the affidavit, including . . . reliable statements from witnesses," *id.*, is well-satisfied here by the Government's own representations. Br. Ex. 21 at 6 (case agent "observed two emails in Google's response to the 2703(d) order before realizing Google's error").

The Government effectively concedes that the case agent's omission was reckless; it does not even attempt to argue that a reasonable person would *not* want to know that the case agent already illegally obtained and reviewed the documents that were the subject of his search warrant affidavit. The case agent deprived the magistrate judge who reviewed the warrant of the opportunity to question the case agent by withholding this information in his affidavit. Instead, the Government argues that that the omission is not material because "the attesting agent did not rely on any substantive content from the overproduced emails in the affidavit." Opp. at 65.

But whether substantive content made it into the affidavit does not end the inquiry; if the knowledge gained from reviewing the ill-gotten emails prompted the agent to seek the warrant, that too taints the finding of probable cause. *Cf. Murray v. United States*, 487 U.S. 533, 543 (1988) (vacating and remanding where "agents did not reveal their warrantless entry to the Magistrate" and "did not include in their

---

existed on the part of the affiant, *and* that there would have been no probable cause but for the incorrect statement.) (emphasis added).

application for a warrant any recitation of their observation," but lower court "did not, however, explicitly find that the agents would have sought a warrant if they had not earlier entered the warehouse").

The only evidence that the showing of probable cause was not tainted are the Government's self-serving statements in its briefing. The case agent, and potentially others on the prosecution team, had these documents in their possession for three years on a readily accessible thumb drive. The Government claims only the case agent saw them, and that he reviewed only two emails. Years later, the case agent now claims he cannot recall the content of the emails, let alone whether they impacted his decision to seek the warrant. Moreover, the Government has declined to provide audit logs for these documents or any metadata reflecting access or downloads. The case agent kept the thumb drive for three years rather than returning it to Google or destroying it. According to the Government's representations, the case agent confused this thumb drive with another when he gave the drive to the eDiscovery team for production to Defendants. Neither the issuing court nor Defendants have had an opportunity to confirm the case agent's statements directly.

The Defense should be afforded the opportunity to subject the case agent's statements to cross-examination in a *Franks* hearing. This is especially true in this case, where the Government has repeatedly declined to provide any metadata

regarding who has reviewed or seen the documents over the course of the last three years.

As the Third Circuit has reiterated, "a court, when confronted with a false affidavit used to obtain a search warrant, must remove a falsehood created by an omission by supplying the omitted information to the original affidavit" rather than mechanistically and counterintuitively assessing whether there was probable cause without the omission. *Sherwood v. Mulvihill*, 113 F.3d 396, 400 (3d Cir. 1997). Because that is a factual determination the Court cannot make on the Government's unsworn assurances alone, a *Franks* hearing is warranted.

## VI. CONCLUSION

For the reasons set forth above, this Court should enter an order (1) dismissing the Indictment on the grounds that it fails to state a claim and is untimely; or in the alternative, (2) striking the Self-Dealing Allegations from the Indictment; (3) directing the government to produce a bill of particulars; (4) directing the Government to produce material required under its Rule 16 and Constitutional obligations; (5) holding that Mr. Normann's privileges were not waived by the Government's disclosure of potentially privileged material; and (6) holding that Mr. Normann is entitled to a *Franks* hearing and reserving his right to move to preclude the contents of his Gmail Account.

Additionally, Mr. Normann requests that he be permitted to join in his co-defendant's reply to the pre-trial motions to the extent they are applicable to him.

Dated: New York, NY
November 9, 2026

Respectfully submitted,
ELLIOTT LEVINE JAROSLAW NEILS LLP

/s/ Lynn A. Neils

Lynn Neils
Sara Probber

60 East 42nd Street, Suite 1570
New York, NY 10165
lneils@eljnlaw.com
sprobber@eljnlaw.com

Attorneys for *Defendant Brian Normann*